UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

HOWARD FROMER,

                      Plaintiff,

- against -

PUBLIC SERVICE ENTERPRISE GROUP INCORPORATED ("PSEG"),
PSEG POWER LLC ("PSEG POWER") AND
PSEG ENERGY RESOURCES & TRADE LLC ("PSEG ER&T")
AS EMPLOYER, SPONSOR AND PLAN ADMINISTRATOR
FOR THE PUBLIC SERVICE ENTERPRISE GROUP
INCORPORATED SEPARATION ALLOWANCE PLAN
FOR NON-REPRESENTED EMPLOYEES,

                      Defendants.

Case No. 1:20-cv-963 (GLS / CFH)

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff, Howard Fromer, by his attorneys, Gleason, Dunn, Walsh & O'Shea, as and for his Complaint, respectfully alleges as follows upon information and belief:

## INTRODUCTION

1. This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §1001 et seq. as a claim against the Defendants Public Service Enterprise Group Incorporated ("PSEG"), PSEG Power LLC ("PSEG Power") and PSEG Energy Resources & Trade LLC ("PSEG ER&T") (collectively, the "PSEG Companies" or "PSEG"), as employer, sponsor and plan administrator for the Public Service Enterprise Group Incorporated Separation Allowance Plan for Non-Represented Employees (collectively, "Defendants"), for failure to pay Plaintiff benefits owed under the terms of the Public Service Enterprise Group Incorporated Separation Allowance Plan for Non-Represented Employees ("Plan").

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1).

3. Plaintiff sets venue in this case within the Northern District of New York, pursuant to 28 U.S.C. §1391 and 29 U.S.C. §1132(e)(2).

## PARTIES

4. Plaintiff, Howard Fromer (hereinafter "Plaintiff") currently resides in Albany, New York. At all relevant times herein, Plaintiff is a resident of Albany County, New York, within the Northern District of New York.

5. Plaintiff was employed by Defendant PSEG Companies for 18 years at a facility managed by PSEG in Albany, New York until he was terminated effective with the pay period ending May 26, 2020.

6. PSEG is a company incorporated in New Jersey but doing business in the State of New York. The PSEG Companies are each wholly owned, direct and indirect subsidiaries of PSEG. The principal and executive offices of PSEG are located at 80 Park Plaza, Newark, New Jersey 07102. PSEG is an exempt public utility holding company engaged in, among other things, the generation of electric energy, and the transmission and sale of electricity through its subsidiaries.

7. PSEG Power is a wholesale energy supply company that integrates its generation asset operations with its wholesale energy, fuel supply, energy trading and marketing and operates nuclear and natural gas plants in New Jersey, New York, Connecticut, Maryland and Hawaii. PSEG Power's three principal subsidiaries are: (i) PSEG Nuclear LLC ("PSEG Nuclear"), which owns and operates nuclear generating stations; (ii) PSEG Fossil LLC ("PSEG Fossil"), which

develops, owns, and operates domestic fossil-fuel fired and other non-nuclear generating stations; and (iii) PSEG ER&T, which is described below.

8. PSEG ER&T, an indirect subsidiary of PSEG, sells power and energy and certain ancillary services at market-based rates. PSEG ER&T markets the capacity and production of the generating stations of PSEG Nuclear and PSEG Fossil, manages the commodity price risks and market risks related to generation, and provides gas supply services. PSEG ER&T is engaged in extensive asset-based energy trading operations throughout the Northeast.

9. Prior to Plaintiff's termination, he was an "employee" of the PSEG Companies, as that term is defined under 29 U.S.C. §1002(6).

10. Prior to Plaintiff's termination on May 26, 2020, the PSEG Companies were the "employer" of Plaintiff as that term is defined under 29 U.S.C. §1002(5).

11. In April 2005, the PSEG Companies established the Public Service Enterprise Group Incorporated Separation Allowance Benefits Plan for Non-Represented Employees (the "Severance Plan" or "Plan"). Attached as **Exhibit A** is a copy of the Public Service Enterprise Group Incorporated Separation Allowance Benefits Plan for Non-Represented Employees Document (the "Severance Plan Document" or "Plan Document").

12. Since April 2005 through the present, the PSEG companies have maintained the Severance Plan for the purpose of providing separation pay to PSEG employees, who are eligible under the Plan, in the event of their separation from PSEG employment.

13. At all relevant times herein, PSEG was responsible for the day-to-day operation and administration of the Severance Plan, including the evaluation of claims for benefits under the Severance Plan by their current or former employees.

14. At all relevant times herein, all payments under the Severance Plan to current or former PSEG employees were funded and paid solely from the general assets of PSEG.

15. The Severance Plan is an ERISA "employee benefit plan" as that term is defined under 29 U.S.C. §1002(3).

16. At all relevant times herein, PSEG was the Severance Plan's "Plan Sponsor" as that term is defined by 29 U.S.C. §1002(16)(B).

17. At all relevant times herein, PSEG was the Severance Plan's "Administrator" of the Severance Plan as that term is defined under 29 U.S.C. §1002(16)(A).

18. At all relevant times herein, Plaintiff was a "Participant" in the Severance Plan as that term is defined under 29 U.S.C. §1002(7).

## BACKGROUND

19. Plaintiff was employed as the Director, Market Policy – NYISO (i.e., New York State Independent System Operator) by PSEG and its family of companies (collectively referred to as "PSEG" or the "Company"), including PSEG Energy Resources and Trade (PSEG ER&T) for 18 years. Prior to joining PSEG, Plaintiff had worked in New York for several decades, including serving as General Counsel for the New York State Energy Office. As Director, Market Policy – NYISO, virtually all of Plaintiff's work was conducted in New York State directing the activities and interests of ER&T and PSEG Power in matters related to energy market design, operation and energy policy and programs in New York and serving as the principal contact with the NYISO — the regional entity responsible for administering the New York wholesale power marketplace — and various New York State entities. A copy of Plaintiff's Job Description is attached as **Exhibit B**.

20. During Plaintiff's 18-year employment with the Company, virtually all of Plaintiff's work was performed out of an office presence at 130 Washington Avenue in the City of Albany, State of New York. Plaintiff's office was strategically located so that Plaintiff had immediate access to government entities involved in the power business and the NYISO.

21. On or about April 27, 2020, Plaintiff was informed by the Company that a corporate reorganization was underway and that the RTO/ISO regulatory function previously part of PSEG ER&T was being moved to a new centralized Regional Transmission Organization ("RTO") strategy function within the Counsel's Office, that would be headed up by the Senior Director of Transmission Development and Strategy, Ms. Jodi Moskowitz.

22. At that same time, Plaintiff was informed by the Company that while there had always been three (3) Market Policy Director positions, each responsible for a separate region – New York, New England and PJM, a region encompassing all or parts of 13 states and the District of Columbia, including Pennsylvania, New Jersey and Maryland – that as a result of the reorganization, there would be only two (2) Market Policy Director positions.

23. Specifically, Plaintiff was informed that his longstanding New York position was being eliminated as of May 4, 2020, and all of Plaintiff's former duties performed in New York State were reassigned to Mr. Joel Gordon, who would also continue to handle the ISO-NE region.

24. During that same April 27, 2020 call, after eliminating Plaintiff's position, the Company offered Plaintiff the PJM position, now called the PJM Strategy Manager, which would be reporting to Ms. Moskowitz.

25. Upon information and belief, virtually all of the duties for this PJM position were to be performed outside of New York State, and do not require interaction with New York State based officials, offices, or entities. The new position is devoted exclusively to duties related to

PJM, a region encompassing all or parts of 13 states and the District of Columbia, including Pennsylvania, New Jersey and Maryland where the vast majority of PSEG's generation plants are located and the region from which nearly all of PSEG's revenues are derived.

26.     Upon information and belief, during Plaintiff's 18-year career with PSEG, the incumbents who held the PJM position were all based in the Company headquarters in Newark, New Jersey, with regular trips required throughout the month to attend stakeholder meetings in Valley Forge, Pennsylvania where PJM's offices are located.

27.     During the April 27, 2020 call, the Company also told Plaintiff that he would be expected to spend three to four nights every other week physically attending PJM stakeholder meetings in Valley Forge, Pennsylvania, which is approximately 250 miles from Albany, New York.

28.     Throughout the week of April 27, 2020, Plaintiff had several telephone conversations with Ms. Moskowitz and his supervisor at the time, Raymond DePillo, regarding the PJM Strategy Manager position. During those conversations, Plaintiff stated that when he was not attending PJM stakeholder meetings in Valley Forge, Pennsylvania, it was his understanding that he would be expected to spend significant time at the Company's headquarters in Newark, New Jersey. Neither Ms. Moskowitz nor Mr. DePillo disputed or corrected Plaintiff's understanding.

29.     Upon information and belief, the PJM Strategy Manager position would require Plaintiff to endure a steep learning curve including learning the market Tariffs, procedures and governance of the PJM market, which are entirely different from the NYISO's Tariffs, procedures and governance.

30. Upon information and belief, the PJM Strategy Manager position would require Plaintiff to develop relationships with numerous government officials, utilities, and other market participants who were unknown to Plaintiff because they were not in the New York markets where he had worked for the prior 18 years at PSEG nor during Plaintiff's 40+ year professional career in New York.

31. On or about May 4, 2020, given the significant differences between Plaintiff's eliminated position and the new position the Company offered him and the extensive travel and time away from home the new job would require, Plaintiff declined the Company's offer and instead requested that the Severance Plan benefits be paid out. *See* **Exhibit C**, email correspondence between Plaintiff and Ms. Moskowitz.

## THE COMPANY's FAILURE TO PAY PLAINTIFF SEPARATION PAY

32. On or about May 5, 2020, the Company, through Ms. Lola Holness, Director Human Resources Client Relations, sent Plaintiff a letter denying his request for severance benefits. Attached as **Exhibit D** is a copy of the May 5, 2020 Letter.

33. In her May 5, 2020 letter, Ms. Holness wrote the following:

> You were offered the position PJM Strategy Manager, supporting the PJM market, at the same grade level as your current positon [sic]. Also, previously communicated to you, your reporting location will not change; you will continue to work from home. Thus, your commuting distance would not have changed. You would have been required to be present for certain PJM meetings. Travel to these meetings is not considered commuting, but rather business travel for which you would have been reimbursed for travel expenses.

34. On the same date Plaintiff's severance was denied, May 5, 2020, Plaintiff also received a letter via email dated May 1, 2020, with a "DRAFT" watermark indicating that there would be no change to Plaintiff's physical work location and that Plaintiff would be expected to be physically present at PJM meetings, once in-person meetings resume. The Letter is attached as

**Exhibit E**. This is inconsistent with the conversations Plaintiff had with Ms. Moskowitz and Mr. DePillo during the week of April 27, 2020 regarding the PJM Strategy Manager position in which it was explained that the majority of Plaintiff's time each month would have been spent in Valley Forge, Pennsylvania or in Newark, New Jersey, both of which are far in excess of 50 miles from Albany, New York. This letter was sent only **after** Plaintiff requested his severance benefits under the Severance Plan Document.

35. On or about May 13, 2020, Plaintiff through his counsel, pursuant to Article VII of the Severance Plan Document, sent written correspondence to Ms. Susan Szafranski, Secretary of the Company's Employee Benefits Committee — the "Plan Administrator" — appealing the Company's denial of Plaintiff's severance benefits. The May 13, 2020 appeal is attached as **Exhibit F.**

36. On or about June 2, 2020, Ms. Szafranski sent a letter to Plaintiff denying Plaintiff's Appeal because:

> [Plaintiff's] principal work location was not changing from [Plaintiff's] home. Thus, [Plaintiff's] commuting distance would not change. The Committee concluded that based on the terms of the Plan, because [Plaintiff's] grade level and commuting distance were staying the same with the change in [Plaintiff's] role from supporting the NY Market to supporting the PJM Market, [Plaintiff] are not eligible for severance benefits under the Plan.

Attached as **Exhibit G** is a copy of the June 2, 2020 letter.

37. The same June 2, 2020 letter provided:

> The Committee's decision is final and binding. The Committee will take no further action on this matter. The Plan does not offer any further voluntary appeal procedures, and you have now exhausted all administrative appeals with respect to this claim. You have a right to bring an action under Section 502(a) of ERISA with respect to this matter.

8

## THE PUBLIC SERVICE ENTERPRISE GROUP INCORPORATED SEPARATION ALLOWANCE BENEFITS PLAN FOR NON-REPRESENTED EMPLOYEES

38. Pursuant to Section 4.1 of the Severance Plan Document, in order to receive separation pay in Article IV, an employee must be an "Eligible Employee" and must be "involuntarily terminated by an Employer for the following reasons . . . (b) A reorganization of the Employer (as determined by the Plan Administrator)." Further, Section 4.1 of the Severance Plan Document also provides that "[i]n order for a termination to be treated as an eligible termination of employment under the Plan, the termination must constitute a Separation from Service."

39. Section 4.1(c) of the Severance Plan Document entitled "Eligible Terminations" provides that an Eligible Employee is eligible for severance benefits when the "[c]essation of employment is in connection with a reduction in force or Employer reorganization . . . where the only position offered to the Eligible Employee within the Company and Affiliates (i) would require the Eligible Employee to increase their one-way commuting distance by more than 50 miles . . ."

40. An "Eligible Employee" as defined under Section 2.8 of the Severance Plan Document includes a regular, full time employee of PSEG.

41. A "Separation from Service" as defined under Section 2.19 of the Severance Plan Document is "deemed to have occurred if a Participant and the Company or any Affiliate reasonably anticipates, based on the facts and circumstances that either: (a) The Participant will not provide any additional-services for the Company or any Affiliate after a certain date."

42. A "Participant" is defined under Section 2.11 of the Severance Plan Document is any "Eligible Employee who is participating in the Plan pursuant to Article III".

9

43. Article III of the Severance Plan Document provides pursuant to Section 3.1, that "[e]ach Eligible Employee who has an eligible termination of employment shall become a Participant on the Eligible Employee's Termination Date . . . ."

44. "Termination Date" is defined under Section 2.21 of the Severance Plan Document to mean "provided that the termination constitutes a Separation from Service, (i) the date of a Participant's death, (ii) the date on which the termination of the Participant's employment by an Employer for cause or without cause, or (iii) the date on which the Participant terminates employment, including Retirement and Disability."

45. Pursuant to Section 4.3 of the Severance Plan Document entitled "Severance Pay" each "Participant who is eligible for benefits under the Plan shall receive an amount of severance pay from the Employer calculated based upon the amount of the Participant's base salary, the number of Years of Service completed as of the Participant's Termination Date, and the Participant's job level as indicated below: (b) Eligible Employees other than Key Managers: . . . (ii) Six or More Years of Service: If, as of the Participant's Termination Date, he or she has completed six or more Years of Service, the amount of severance pay shall equal two Weeks of Base Salary for each Year of Service, up to a maximum of 52 Weeks of Base Salary."

46. A "Year of Service" is defined under Section 2.24 of the Severance Plan Document and means "the number of twelve-month periods of employment credit to an Eligible Employee, beginning on the Eligible Employee's commencement of employment with the Company or an Affiliate and ending on the Eligible Employee's Termination Date."

47. A "Week of Base Salary" is defined under Section 2.23 of the Severance Plan Document and means "(a) for a full-time salaried employee, the amount of the employee's annual

rate of base salary as in effect immediately prior to the Participant's Termination Date divided by 52 . . . ."

48. A "Key Manager" is defined under Section 2.10 of the Severance Plan Document as "any Eligible Employee who is employed in a position rated as grade 31 or higher."

### PLAINTIFF'S ELIGIBILITY FOR SEPARATION PAY

49. Plaintiff is entitled to separation pay benefits under the terms of the Severance Plan Document.

50. At all relevant times herein, Plaintiff is an "Eligible Employee" as that term is defined under Section 2.8 of the Severance Plan Document. At the time Plaintiff's position was eliminated, Plaintiff was a full-time employee of the Company.

51. At all relevant times herein, Plaintiff is a "Participant" within the meaning of Section 2.11 of the Severance Plan Document because he was involuntarily terminated from employment as a result of the Company's "reorganization".

52. At all relevant times herein, the Company is the "Employer" as that term is defined under Section 2.9 of the Severance Plan Document.

53. At all relevant times herein, the Employee Benefits Committee of the Company was the "Plan Administrator" as that term is defined under Section 2.15 of the Severance Plan Document.

54. Plaintiff is entitled to severance benefits under the Plan pursuant to Section 4.1, because Plaintiff's termination from the Company's employment was made in connection with a corporate reorganization whereby the Plaintiff's position was eliminated.

55. Since Plaintiff held the position of Director, Market Policy – NYISO, which is not a "Key Manager" position, as the term is defined in Section 2.10 of the Severance Plan Document,

Plaintiff is entitled to 36 weeks of severance pay based upon Plaintiff's 18 years of service, as provided in Section 4.3 of the Severance Plan Document. (See Exhibit A).

56.     The Plan Administrator on Plaintiff's appeal denied his request for Severance Benefits on the basis that the new PJM position offered to Plaintiff did not increase Plaintiff's one-way commuting distance by more than 50 miles. This determination is inconsistent with the representations made by the Company to Plaintiff, the administrative record and the requirements of the PJM Strategy Manager position.

**AS AND FOR A CAUSE OF ACTION
FOR VIOLATION OF SECTION 1132 OF THE
EMPLOYEE RETIREMENT INCOME SECURITY ACT**

57.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), a participant in an ERISA covered plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

58.     Plaintiff is a "Participant" and "Eligible Employee" pursuant to the terms of the Severance Plan Document and is not excluded from the receipt of benefits by any provisions of the Severance Plan Document, including but not limited to Section 4.1(c).

59.     Plaintiff applied for and was denied benefits under the plan.

60.     Plaintiff has since exhausted all remedies provided by the Plan prior to filing suit.

61.     Defendants' failure to pay Plaintiff separation pay violates the terms of the Severance Plan Document.

62.     Plaintiff is entitled to *de novo* review of Defendants' failure to pay Plaintiff separation pay. Assuming *arguendo* Plaintiff is not entitled to *de novo* review, Defendants acted arbitrarily and capriciously in failing to pay Plaintiff separation pay.

63. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to recover from Defendants the separation pay benefits owed pursuant to the terms of the Severance Plan Document.

64. Pursuant to 29 U.S.C § 1132(g), Plaintiff is entitled to recover from Defendants its reasonable attorney's fees, disbursements, costs and expenses incurred in prosecuting this action.

**WHEREFORE,** Plaintiff demands judgment as follows:

1. On its first cause of action, Plaintiff demands judgment against Defendants for an amount equaling the value of separation pay benefits owed to Plaintiff, plus prejudgment interest, and the reasonable attorney's fees, costs, expenses and disbursements of this action to be determined by the Court; and

2. Such other and further relief as the Court deems just and appropriate.

### JURY DEMAND

The Plaintiff respectfully demands trial by jury on each and every issue of the Complaint.

DATED: Albany, New York
August 18, 2020

**GLEASON, DUNN, WALSH & O'SHEA**

_____
RONALD G. DUNN, ESQ.
Bar Roll No. 101553

Attorneys for Plaintiff
40 Beaver Street
Albany, New York 12207
(518) 432-7511