## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD FROMER,<br><br>      Plaintiff,<br><br>    v.<br><br>PUBLIC SERVICE ENTERPRISE GROUP INCORPORATED ("PSEG"), PSEG POWER LLC ("PSEG POWER") AND PSEG ENERGY RESOURCES & TRADE LLC ("PSEG ER&T") AS EMPLOYER, SPONSOR AND PLAN ADMINISTRATOR FOR THE PUBLIC SERVICE ENTERPRISE GROUP INCORPORATED SEPARATION ALLOWANCE PLAN FOR NON-REPRESENTED EMPLOYEES,<br><br>      Defendants. | Civil Action No. 1:20-cv-00963-GLS-CFH |

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

**FISHER & PHILLIPS LLP**
430 Mountain Avenue, Suite 303
Murray Hill, NJ  07974

The New York Times Building
620 Eighth Avenue, Suite 3650
New York, NY 10018

*Of Counsel:*
    Kathleen McLeod Caminiti, Esq.

*On the Brief:*
    David J. Treibman, Esq.

FP 46312301.1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

LEGAL ARGUMENT .............................................................................................................4

    I.      Standard of Review ...........................................................................................4

           A.      Summary Judgment ..............................................................................4

           B.      The Deferential Arbitrary and Capricious Standard
of Review Applies ................................................................................4

    II.     Review Is Limited to the Administrative Record ...........................................6

    III.    Plaintiff Cannot Show the Plan Administrator's Decision
Was Arbitrary and Capricious ..........................................................................7

CONCLUSION ......................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brightman v. 1199SEIU Health Care Employees Pension Fund*,
  No. 18-cv-4932, 2021 WL 809373 (S.D.N.Y. Mar. 2, 2021) ................................................... 9

*Buckley v. Slocum Dickson Med. Grp., PLLC*,
  585 F. App'x 789 (2d Cir. 2014) ........................................................................................... 8

*Catania v. First Unum Life Ins. Co.*,
  No. 19-CV-133, 2020 WL 2129374 (N.D.N.Y. May 5, 2020) ............................................... 4

*Elizabeth W. v. Empire HealthChoice Assurance, Inc.*,
  709 F. App'x 724 (2d Cir. 2017) ........................................................................................... 5

*Feltington v. Hartford Life Ins. Co.*,
  No. 14-CV-6616, 2021 WL 2474213 (E.D.N.Y. June 16, 2021) .......................................... 6

*Figueroa v. Mazza*,
  825 F.3d 89 (2d Cir. 2016) ..................................................................................................... 4

*Graham Engineering Corp. v. Adair*,
  No. 16-CV-2521, 2021 WL 9204331 (M.D. Pa. Feb. 10, 2021) ................................... 12, 13

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
  571 U.S. 99 (2013) ................................................................................................................. 7

*McCarthy-O'Keefe v. Local 295/851 IBT Emp. Grp. Pension Trust Fund*,
  648 F. App'x 145 (2d Cir. 2016) ........................................................................................... 7

*McCauley v. First Unum Life Ins. Co.*,
  551 F.3d 126 (2d Cir. 2008) ................................................................................................... 8

*Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*,
  No. 13-CV-85V, 2019 WL 1428083 (W.D.N.Y. Mar. 28, 2019) .......................................... 9

*Miller v. United Welfare Fund*,
  72 F.3d 1066 (2d Cir. 1995) ............................................................................................. 6, 7

*Perdue v. Rockydale Quarries Corp.*,
  No. 18CV00416, 2019 WL 2216527 (W.D. Va. May 22, 2019) ......................................... 11

*Putnam v. United States*,
  32 F.3d 911 (5th Cir. 1994) ................................................................................................. 11

*Roganti v. Metro. Life Ins. Co.*,
  786 F.3d 201 (2d Cir. 2015)..................................................................................5, 6, 7

*Shapiro v. N.Y. Univ.*,
  640 F. Supp. 2d 411 (S.D.N.Y. 2009).............................................................................7

*Twombly v. AIG Life Ins. Co.*,
  199 F.3d 20 (1st Cir. 1999)...........................................................................................10

*Tyll v. Stanley Black & Decker Life Ins. Program*,
  857 F. App'x 674 (2d Cir. 2021) ....................................................................................5

*United States v. Helms*,
  No. 08 CV 151, 2010 WL 3384997 (S.D. Cal. Aug. 26, 2010)....................................10

*Whelehan v. Bank of Am. Pension Plan for Legacy Cos.*,
  621 F. App'x 70 (2d Cir. 2015) .....................................................................................7

*Wilbert v. Comm'r*,
  553 F.3d 544 (7th Cir. 2009) .......................................................................................11

*Zeuner v. Suntrust Bank Inc.*,
  181 F. Supp. 3d 214 (S.D.N.Y. 2016)............................................................................8

**Statutes**

29 U.S.C. §1132(a)(1)(B) .......................................................................................................4

**Rules**

Fed.R.Civ.P. 56(a) .................................................................................................................4

L.Civ.R. 56.1(a) .....................................................................................................................1

## INTRODUCTION

Plaintiff was an 18-year veteran employee of PSEG and a highly valued one.[1] Therefore, when in the first part of 2020 the Company decided to eliminate his position in a reorganization, he was offered another position with the same base salary, salary grade level, and benefits. (Facts ¶7.[2]) Plaintiff rejected the offer and applied for severance benefits under the Public Service Enterprise Group Incorporated Separation Allowance Plan for Non-Represented Employees (the "Plan").

Prior to the reorganization, Plaintiff worked for the Company in his home in Albany and his business travel for the most part was fairly local. In the new position PSEG offered him, Plaintiff would continue to work in his home, but when the pandemic restrictions lifted, he would be expected to travel periodically to Valley Forge, Pennsylvania – which the Complaint alleges is 250 miles from Albany – for meetings. (Compl., Doc. 1, ¶27; Facts ¶¶3-4, 9.)

Plaintiff claimed this entitled him to benefits under the Plan, which grants benefits to an employee-participant terminated in a reorganization where the only alternative position offered "would require the [employee] to increase their one-way *commuting distance* by more than 50 miles." (Facts ¶10, quoting the Plan.) PSEG disagreed, as did the Plan Administrator (PSEG's Employee Benefits Committee, referred to herein as the "EBC" or "Committee").

PSEG's letter to Plaintiff describing the duties of his new position, which remained in draft form because Plaintiff rejected the position, explained, "There will be no change in your physical work location. Your work location will remain in Albany, NY. You will be expected to be

---

[1] "PSEG" or the "Company" refers, collectively, to all the Defendants: Public Service Enterprise Group Incorporated, PSEG Power LLC, and PSEG Energy Resources & Trade LLC.

[2] "Facts" refers to Defendants' Local Rule 56.1(a) Statement of Material Facts in Support of Motion for Summary Judgment, submitted herewith.

physically present at PJM meetings [PJM was the region for which Plaintiff would be Strategy Manager in his new position] once in-person meetings resume." (Facts ¶20.)

PSEG therefore denied Plaintiff's initial application for severance benefits, explaining it had been "previously communicated to you, your reporting location will not change; you will continue to work from home. Thus, your commuting distance would not have changed. You would have been required to be present for certain PJM meetings. Travel to these meetings is not considered commuting, but rather business travel for which you would have been reimbursed for travel expenses." (Facts ¶22.)

In considering Plaintiff's appeal from the initial denial of severance benefits, the EBC properly concluded that Plaintiff was not entitled to severance under the Plan. Since Plaintiff's "principal work location was not changing from his home," his "commuting distance would not change." (Facts ¶25.) "[B]ased on the terms of the Plan, because [Plaintiff's] grade level and commuting distance were staying the same," he was "not eligible for severance benefits under the Plan." (Facts ¶26.) The EBC voted unanimously to deny Plaintiff's appeal. (Facts ¶27.)

In its June 2, 2020 letter to Plaintiff informing him of the denial, the EBC noted that "prior to the reorganization" Plaintiff "worked from home." (Facts ¶29.) Nothing would have changed in his new position. When Plaintiff was informed of the reorganization and offered the new position, it was "explained that you could continue to work from home, however, periodically, you would need to travel to the Valley Forge, PA area to support the PJM Market." (Facts ¶30.) The EBC repeatedly emphasized in its denial letter that there was no change in Plaintiff's principal place of work. "Your principal physical work location was not changing – it would remain as your home. Your business travel would change from the NY Market offices to the PJM Market offices after face-to-face meetings resume (whatever they would look like after offices re-open)." (Facts ¶33.)

2

Again, "your principal work location was not changing from your home. Thus, your commuting distance would not change." (*Id.*) "[B]ecause your grade level and commuting distance were staying the same ..., you are not eligible for severance benefits under the Plan." (*Id.*).

The foregoing facts, and all other material facts, are undisputed. The only dispute is over the meaning of "commute." Plaintiff's contention was and is that the proffered new position's requirement of periodic business travel to Valley Forge would have meant an increase in his one-way "commuting distance" of more than 50 miles, entitling him to Plan benefits. The Plan Administrator's position was and is that Plaintiff's work location would continue to be his home, so there would be no change in his commuting distance, and his periodic travel to Valley Forge would be business travel, for which his expenses would be reimbursed. (Facts ¶¶8, 22.) Therefore, Plaintiff was not entitled to Plan benefits.

The question this case presents is thus: Whose interpretation of the word "commute" as used in the Plan (in "commuting distance") should prevail? That is not a tough question. The Plan confers discretionary authority on the Plan Administrator to interpret Plan terms and determine eligibility for benefits. Under long-established precedent, that means the Administrator's interpretation of Plan language cannot be overturned on judicial review unless it was "arbitrary and capricious." That requires a finding that the Administrator's interpretation was unreasonable, which it obviously was not. The Court should accordingly grant PSEG summary judgment and dismiss the Complaint with prejudice.

# LEGAL ARGUMENT

## I. Standard of Review.

### A. Summary Judgment.

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A "material" fact is "one capable of influencing the case's outcome under governing substantive law"; a "genuine" dispute is "one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"It is appropriate for courts reviewing a challenge of denial of benefits under ERISA to do so on a motion for summary judgment, which provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record. In such an action the contours guiding the court's disposition of the summary judgment motion are necessarily shaped through the application of the substantive law of ERISA." *Catania v. First Unum Life Ins. Co.*, No. 19-CV-133, 2020 WL 2129374, at *5 (N.D.N.Y. May 5, 2020) (granting defendants' summary judgment motion and denying plaintiff's) (internal quotation marks & citation omitted).

### B. The Deferential Arbitrary and Capricious Standard of Review Applies.

Plaintiff challenges the Plan Administrator's denial of benefits under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). (Compl. ¶¶57, 63.) Under that provision, a "deferential standard of review" applies where the ERISA plan confers "discretionary authority" on the plan

administrator. *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015); 5/6/2021 Mem.-Decision & Order ("5/6/2021 Order," Doc. 16) at 6.

"There are no linguistic 'talismans' to indicate delegation of discretion." *Tyll v. Stanley Black & Decker Life Ins. Program*, 857 F. App'x 674, 676 (2d Cir. 2021) (citing *Pagan v. NYNEX Pension* Plan, 52 F.3d 438, 442 (2d Cir. 1995)). Thus, "'magic words such as "discretion" and "deference"' are not necessary to confer discretionary authority." *Elizabeth W. v. Empire HealthChoice Assurance, Inc.*, 709 F. App'x 724, 726 (2d Cir. 2017) (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999)); *Tyll*, 857 F. App'x at 676 (noting that "[a] reservation of discretion need not actually use the words 'discretion' or 'deference'") (quoting *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008)).

Here, however, magic words abound. The Plan provides, "The Plan Administrator shall have the ***sole discretion*** to determine eligibility under the Plan" (Facts ¶12), and further:

> The Plan Administrator has the ***sole and absolute discretion and authority*** to interpret and apply the provisions of this Plan to a particular circumstance, make all factual and legal determinations, construe uncertain or disputed terms and make eligibility and benefit determinations in such manner and to such extent as the Plan Administrator in its ***sole discretion*** may determine, including the ***absolute discretion and authority*** to make final eligibility determinations with respect to benefit claims and appeals.

(Facts ¶13.)

The Court has accordingly already held in this case that "[a] review of the Plan confirms that the Plan Administrator had discretionary authority under the Plan" (5/6/2021 Order at 7), as Plaintiff has acknowledged (Pl.'s Mem., Doc. 35-16, at 10), and Magistrate Judge Hummel has reiterated (9/27/2022 Order, Doc. 40, at 7 n.5). *See also, e.g., Tyll*, 857 F. App'x at 676 (discretionary authority conferred where administrator had authority to "'determine eligibility for and amount of any benefits' and to evaluate all benefit claims and appeals under the Plan'")

5

(brackets omitted); *Feltington v. Hartford Life Ins. Co.*, No. 14-CV-6616, 2021 WL 2474213, at *7 (E.D.N.Y. June 16, 2021) (discretionary authority conferred where administrator had "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of" the plan).

As a result, the Committee's decision "may be overturned only if [it was] *arbitrary and capricious*." *Roganti*, 786 F.3d at 210 (emphasis added). The "arbitrary and capricious" standard is "'highly deferential,' and 'the scope of judicial review is narrow.'" *Id.* at 211 (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003)). "Where an administrator has discretionary powers, courts reviewing its decisions are assessing the reasonableness of those decisions, and not 'considering the issue of eligibility anew.'" *Id.* at 217 (quoting *Pagan*, 52 F.3d at 442). "[A] plan administrator's decision is intended to be final – within the bounds of the highly deferential arbitrary-and-capricious standard – and not merely an input with 'the potential to assist the Court' in making the ultimate determination." *Id.* (quoting district court). A plan administrator's decision is not arbitrary and capricious unless it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (quoting *Pagan*, 52 F.3d at 442).

## II.   Review Is Limited to the Administrative Record.

One consequence of the applicability of the arbitrary and capricious standard is that a court's review of the plan administrator's denial of benefits is limited to the "administrative record," i.e., the evidence before the administrator. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). That means "[t]he reasonableness of the administrator's decision to deny benefits is not an issue that courts will permit evidence [of] beyond the administrative record." *Feltington*, 2021 WL 2474213, at *7 (court's brackets omitted); *see also, e.g., Miller*, 72 F.3d at

1071 ("[A] district court's review under the arbitrary and capricious standard is limited to the administrative record"); *McCarthy-O'Keefe v. Local 295/851 IBT Emp. Grp. Pension Trust Fund*, 648 F. App'x 145, 146 (2d Cir. 2016) ("If the district court engages in an arbitrary and capricious standard of review, the court's review is limited to the administrative record"); *Roganti*, 786 F.3d at 217 & n.11 (observing that "a plan administrator's decision is intended to be final" under the arbitrary and capricious standard "and not merely an input with 'the potential to assist the Court' in making the ultimate determination"; "[i]t is for this reason that we held, in *Miller v. United Welfare Fund*, that 'a district court's review under the arbitrary and capricious standard is limited to the administrative record'"); *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 111 (2013) ("[T]o the extent participants fail to develop evidence during internal review, they risk forfeiting the use of that evidence in district court," as "[t]he Courts of Appeals have generally limited the record for judicial review to the administrative record complied during internal review"); *Whelehan v. Bank of Am. Pension Plan for Legacy Cos.*, 621 F. App'x 70, 72 (2d Cir. 2015) ("Rather than point to evidence in the administrative record undermining the Appeals Committee's decision, Whelehan demands that defendants produce evidence supporting it. This misapprehends ERISA's assignment of burdens and the scope of judicial review. '[A] district court's review under the arbitrary and capricious standard is limited to the administrative record'") (quoting *Miller*, 72 F.3d at 1071).

### III. Plaintiff Cannot Show the Plan Administrator's Decision Was Arbitrary and Capricious.

"Under the arbitrary and capricious standard, a court must give great deference to a plan administrator's interpretation of a plan's terms. The court must yield to a plan administrator's 'reasonable' interpretation, even if the plaintiff's alternative interpretation of the plan's terms is also reasonable." *Shapiro v. N.Y. Univ.*, 640 F. Supp. 2d 411, 421 (S.D.N.Y. 2009) (citing *Jordan*

7

*v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271, 1273 (2d Cir. 1995)). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008); *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016).

The Plan here grants severance benefits only if the position offered to an employee subject to a reorganization "would require the [employee] to increase their one-way commuting distance by more than 50 miles." (Facts ¶10.)  The Plan Administrator "must implement and follow the plain language of the [P]lan." *Buckley v. Slocum Dickson Med. Grp., PLLC*, 585 F. App'x 789, 793 n.1 (2d Cir. 2014).

The Plan Administrator determined there would be no increase in Plaintiff's commuting distance because he would have continued working from home in the new position, just as he had in his prior, eliminated position. The only difference is that the new position would have required periodic travel from Plaintiff's home in Albany to Valley Forge, Pennsylvania, for business meetings. As the Administrator construed the Plan term "commuting distance," that was not a *commute* but rather *business travel*, the expenses of which would have been reimbursed to Plaintiff. This was made clear to Plaintiff in every relevant communication:

- "There will be no change to your physical work location. Your work location will remain in Albany, NY. You will be expected to be physically present at PJM meetings once in-person meetings resume." (Facts ¶20.)

- "[P]reviously communicated to you, your reporting location will not change; you will continue to work from home. Thus, your commuting distance would not have changed. You would have been required to be present for certain PJM meetings. Travel to these meetings is not considered commuting, but rather business travel for which you would have been reimbursed for travel expenses." (Facts ¶22.)

8

- "[It was] explained that you could continue to work from home, however, periodically, you would need to travel to the Valley Forge, PA area to support the PJM Market." (Facts ¶24.)

- "Your principal physical work location was not changing – it would remain as your home. Your business travel would change from the NY Market offices to the PJM Market offices after face-to-face meetings resume (whatever they would look like after offices re-open)." (Facts ¶33.)

- "[A]ll of the conversations you had with Ms. Moskowitz, your new manager, and Ms. Holness were clear that your principal work location was not changing from your home. Thus, your commuting distance would not change. The Committee concluded that based on the terms of the Plan, because your grade level and commuting distance were staying the same with the change in your role from supporting the NY Market to supporting the PJM Market, you are not eligible for severance benefits under the Plan." (Facts ¶33.)

The only way Plaintiff can prevail, under the controlling arbitrary and capricious standard, would be to prove that the EBC's interpretation of the word commute in the Plan term "one-way commuting distance" was unreasonable; the burden of proving unreasonableness is on Plaintiff. *See, e.g., Brightman v. 1199SEIU Health Care Employees Pension Fund*, No. 18-cv-4932, 2021 WL 809373, at *13 (S.D.N.Y. Mar. 2, 2021) ("*[T]he plaintiff must show* that the administrator's decision was 'without reason, unsupported by substantial evidence or erroneous as a matter of law"); *Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*, No. 13-CV-85V, 2019 WL 1428083, at *17 (W.D.N.Y. Mar. 28, 2019) ("[F]or purposes of Plaintiffs' and Defendants' motions for summary judgment, whether Defendants wrongfully denied Plaintiffs' [] benefits turns on whether the record demonstrates Defendants' determination ... was based on an unreasonable, i.e., an arbitrary and capricious, interpretation of the requirements of the Plan"), *adopted*, 2020 WL 5939202 (W.D.N.Y. Oct. 7, 2020), *aff'd*, No. 20-3791, 2022 WL 610340 (2d Cir. Mar. 2, 2022), *pet. for cert. docketed*, No. 22-417 (U.S. Nov. 2, 2022).

9

There is no way Plaintiff can show the EBC's interpretation of "commuting" was unreasonable. Quite the contrary. It is commonly understood that an employee's "commute" is his daily travel to and from his regular workplace. That is how the Internal Revenue Service defines it. *See* IRS Pub. 463 at 12 ("Transportation expenses between your home and your main or regular place of work are personal commuting expenses"), *available at* https://www.irs.gov/pub/irs-pdf/p463.pdf (last visited Jan. 31, 2023); *id.* at 14 ("You can't deduct the costs of taking a bus, trolley, subway, or taxi, or of driving a car between your home and your main or regular place of work" because they are "[c]ommuting expenses").

That is how dictionaries define it. *See, e.g.*, Cambridge Dictionary (to "commute" is "to make the same trip regularly between work and home"), https://dictionary.cambridge.org/us/dictionary/english/commute (last visited Jan. 31, 2023); Vocabulary.com (a "commute" is "a regular journey of some distance to and from your place of work"), https://www.vocabulary.com/dictionary/commute (last visited Jan. 31, 2023); Macmillan Dictionary (to "commute" is "to travel regularly to and from work") (emphasis added), https://www.macmillandictionary.com/us/dictionary/american/commute_1 (last visited Jan. 31, 2023).

That is also how the case law defines it: "[C]ommuting within the generally understood meaning of that concept [is] repeated travel along the same route between home and one's regular place of work." *Twombly v. AIG Life Ins. Co.*, 199 F.3d 20, 22 (1st Cir. 1999); *see also, e.g., Porter v. Lowe's Cos., Inc.'s Bus. Travel Accident Ins. Plan*, 731 F.3d 360, 365 n.15 (5th Cir. 2013) (referring to an "employee's everyday commute to and from the place of employment" and "regular travel between home and work for the sole purpose of reaching the intended destination") (quoting 10 COUCH ON INS. §143:13); *United States v. Helms*, No. 08 CV 151, 2010 WL 3384997,

at *8 (S.D. Cal. Aug. 26, 2010) ("[I]t has been consistently held that a taxpayer's 'commuting' expenses from his residence to his place of employment are not deductible") (quoting *Crowther v. Comm'r*, 269 F.2d 292, 298 (9th Cir. 1959) (citing *Comm'r v. Flowers*, 326 U.S. 465 (1946))), *aff'd*, 579 F. App'x 615 (9th Cir. 2014).

"Business travel" on the other hand "is clearly distinct from, and does not include, commuting to and from work"; it is "travel undertaken for work or business purposes, as opposed to other types of travel, such as ... regularly commuting between one's home and workplace." *Perdue v. Rockydale Quarries Corp.*, No. 18CV00416, 2019 WL 2216527, at *6 (W.D. Va. May 22, 2019); *see also, e.g., Putnam v. United States*, 32 F.3d 911, 918 (5th Cir. 1994) (to characterize travel as deductible business travel, "a taxpayer must travel beyond the point where he commutes on a daily basis to execute the functions of his office"); *Wilbert v. Comm'r*, 553 F.3d 544, 547 (7th Cir. 2009).[3]

---

[3] *Wilbert* (per Judge Posner) offers a hypothetical of a lawyer-taxpayer who commutes to his office in Minneapolis, but because he has an international practice he spends most of his time in business travel:

> [A] lawyer whose home and office are both in Minneapolis but who has an international practice [] as a result spends more time on the road than he does at home. Nevertheless he can deduct his traveling expenses. His work requires him to maintain a home within normal commuting distance of Minneapolis because that is where his office is, but his work also requires him to travel, and the expenses he incurs in traveling are necessary to his work and he cannot offset them by relocating his residence to the places to which he travels because he has to maintain a home near his office.

553 F.3d at 547. Plaintiff here would have been in the position of the lawyer in the hypothetical: *commuting* to his home office (a very short commute) just as he did before, but spending some portion of his time in *business travel*. Under *Wilbert*, even if Plaintiff were to "spend more time on the road than he does at home," that would not transmogrify his business travel into commuting, and would not entitle him to benefits under the Plan, which addresses only an increase in commuting distance.

11

There is no dispute that Plaintiff's "regular place of work" would have remained the same in his new position – his home. Plaintiff's commute, under the common, universally recognized meaning of "commute" as one's daily travel between home and workplace, would accordingly have remained the same – his "commuting distance" would effectively be zero miles. Presumably, Plaintiff's "business travel" to Valley Forge, Pennsylvania, or elsewhere (once Covid restrictions were lifted) would have been a greater distance or more frequent than he preferred, but that did not entitle him to severance benefits. The Plan's plain language granted benefits only if the new position he was offered would have required him "to increase [his] one-way commuting distance by more than 50 miles." (Facts ¶10.) That is simply not the case here.

Plaintiff's position is virtually identical to that of the counterclaimant (named Slusarz) in *Graham Engineering Corp. v. Adair*, No. 16-CV-2521, 2021 WL 9204331 (M.D. Pa. Feb. 10, 2021). Slusarz's severance claim was based on an individual employment agreement. The agreement granted Slusarz severance if he resigned for "good reason," defined in relevant part as "relocation of the [Employer] to a place that is more than fifty miles from Ashaway, Rhode Island [where Slusarz then worked for the Employer] and *increases the Employee's commute by more than fifty miles*." *Id.* at *3 (emphasis added). As a result of plaintiff/counterclaim defendant Graham's acquisition of Slusarz's Employer, its headquarters was moved from Ashaway, Rhode Island, to York, Pennsylvania. Slusarz's position was eliminated, but he was offered a new one, which would permit him to work at a new satellite office in Stonington, Connecticut, less than five miles away from the Ashaway location. The offer to Slusarz – like the offer to Plaintiff in this case – noted that his new position "would require travel and includes certain reimbursements for that travel, but it does not specify a particular percentage or amount of travel hours that would be required." *Id.* at *4.

Slusarz, again like Plaintiff, declined the offer and claimed severance under his agreement, explaining "he could not move to York or 'spend excessive time on the road.'" *Id.* Slusarz also believed he would "have to relocate to York in the long term." *Id.*

The court granted summary judgment to Graham on Slusarz's counterclaim for severance. There was no "good reason" for Slusarz to have rejected Graham's offer, since "Graham offered Slusarz work in the nearby satellite office, with travel to York"; there would not be a 50-mile increase in Slusarz's commute, but a five-mile one. *Id.* at *12. There was no contention that the words "travel" (to Pennsylvania) and "commute" (to the satellite office in Connecticut) "denote[d] anything other than their plain and ordinary meanings." The court relied on IRS publications that defined a "commuting expense" as "based on a taxpayer's 'transportation and commuting between an employee's place of residence and place of employment,'" and "business travel" as including "traveling away from home for your business, profession, or job." *Id.* at *12 n.11. The court deemed Slusarz's concern that he would eventually have to relocate to York, Pennsylvania as speculation insufficient "to create a genuine issue of material fact." *Id.* at *12.

Since Slusarz's claim sounded in contract rather than ERISA, it was reviewed under a de novo standard, rather than the deferential arbitrary and capricious standard that applies here. Certainly, if Slusarz's claim failed under a de novo standard, Plaintiff's claim, presenting virtually identical facts, must fail under the arbitrary and capricious standard. The Court should accordingly grant PSEG summary judgment and dismiss the Complaint with prejudice.

## CONCLUSION

This is a very simple case., Plaintiff was not entitled to severance benefits under the Plan because there was no increase in his commuting distance: Plaintiff worked from home and would continue to do so in his new position. The Plan Administrator's decision was thus not arbitrary or

13

capricious, but the only possible decision under the Plan's plain language. The Court should therefore grant PSEG summary judgment and dismiss the Complaint with prejudice.

          Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: *s/Kathleen McLeod Caminiti*
Kathleen McLeod Caminiti
Fisher & Phillips LLP
430 Mountain Avenue
Suite 303
Murray Hill, NJ 07974
Tel.: 908-516-1050
Fax: 908-516-1051
Email: kcaminiti@fisherphillips.com

**PSEG SERVICES CORPORATION**

By: *s/Susan Szafranski*
Susan Szafranski
Admitted *Pro Hac Vice*
Associate Counsel – Labor, Employment, & Benefits
PSEG Services Corporation
80 Park Plaza
Newark, NJ 07102
Email: susan.szafranski@pseg.com
Tel.: 908-380-1272

*Attorneys for Defendants Public Service Enterprise Group Incorporated, PSEG Power LLC, and PSEG Energy Resources & Trade LLC*

Dated: February 10, 2023