## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HOWARD FROMER, <br><br> Plaintiff, <br><br> v. <br><br> PUBLIC SERVICE ENTERPRISE GROUP INCORPORATED ("PSEG"), PSEG POWER LLC ("PSEG POWER") AND PSEG ENERGY RESOURCES & TRADE LLC ("PSEG ER&T") AS EMPLOYER, SPONSOR AND PLAN ADMINISTRATOR FOR THE PUBLIC SERVICE ENTERPRISE GROUP INCORPORATED SEPARATION ALLOWANCE PLAN FOR NON-REPRESENTED EMPLOYEES, <br><br> Defendants. | : <br> : <br> : Civil Action No. 1:20-cv-00963-GLS-CFH <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**FISHER & PHILLIPS LLP**
430 Mountain Avenue, Suite 303
Murray Hill, NJ  07974

The New York Times Building
620 Eighth Avenue, Suite 3650
New York, NY 10018

*Of Counsel:*
    Kathleen McLeod Caminiti, Esq.
    Susan M. Szafranski, Esq.

*On the Brief:*
    David J. Treibman, Esq.

i

## TABLE OF CONTENTS

Page

Preliminary Statement ...................................................................................................................1

Legal Argument .............................................................................................................................2

    I.      Evidence Outside the Administrative Record Is Inadmissible ...............................2

    II.     Plaintiff Has Explicitly or Implicitly Admitted Every Single Paragraph of PSEG's Statement of Material Facts ....................................................6

    III.    Plaintiff Cannot Carry His Heavy Burden of Proving the Denial of Benefits Was Arbitrary and Capricious ................................................................7

Conclusion ...................................................................................................................................14

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Babino v. Gesualdi*,
   278 F. Supp. 3d 562 (E.D.N.Y. 2017),
   *aff'd*, 744 F. App'x 30 (2d Cir. 2018) ............................................................................... 5, 6

*Baird v. Prudential Ins. Co. of Am.*,
   No. 09 Civ. 7898, 2010 WL 3743839 (S.D.N.Y. Sept. 24, 2010),
   *aff'd*, 458 F. App'x 39 (2d Cir. 2012) .................................................................................. 4, 5

*Camreta v. Greene*,
   563 U.S. 692 (2011) ................................................................................................................ 11

*Correia v. Unum Life Ins. Co. of Am.*,
   No. 14 Civ. 7960, 2016 WL 5462827 (S.D.N.Y. Sept. 29, 2016) ............................................ 3

*Daniel v. UnumProvident Corp.*,
   261 F. App'x 316 (2d Cir. 2008) ............................................................................................ 10

*Davis v. City of Syracuse*,
   No. 12-CV-0276, 2015 WL 1413362 (N.D.N.Y. Mar. 27, 2015) ............................................ 7

*Delprado v. Sedgwick Claims Management Services*,
   No. 12-CV-673, 2013 WL 12174051 (N.D.N.Y. Oct. 22, 2013) ......................................... 3, 4

*Garrett v. Provident Life & Cas. Ins. Co.*,
   No. 11-CV-00133, 2021 WL 1946330 (E.D.N.Y. May 14, 2021) ........................................... 4

*Gonzalez v. Local 553 Pension Fund*,
   No. 16 Civ. 8893, 2017 WL 3242329 (S.D.N.Y. July 28, 2017) ............................................. 3

*Graham Engineering Corp. v. Adair*,
   No. 16-CV-2521, 2021 WL 9204331 (M.D. Pa. Feb. 10, 2021) ............................................ 11

*Halberg v. United Behavioral Health*,
   408 F. Supp. 3d 118 (E.D.N.Y. 2019) .................................................................................... 10

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   571 U.S. 99 (2013) .................................................................................................................... 9

*Kotler v. Bosco*,
   No. 17-CV-0394, 2020 WL 7029138 (N.D.N.Y. July 21, 2020),
   *adopted*, 2020 WL 6128168 (N.D.N.Y. Oct. 19, 2020); ......................................................... 7


*Mayers v. Emigrant Bancorp, Inc.*,
   796 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................................2

*McCarthy-O'Keefe v. Local 298/851 IBT Emp'r Grp. Pension Tr. Fund*,
   No. 13-CV-4785, 2015 WL 783352 (S.D.N.Y. Feb. 24, 2015),
   *aff'd*, 648 F. App'x 145 (2d Cir. 2016).................................................................................4

*McCauley v. First Unum Life Ins. Co.*,
   551 F.3d 126 (2d Cir. 2008)...................................................................................................8

*Perdue v. Rockydale Quarries Corp.*,
   No. 18CV00416, 2019 WL 2216527 (W.D. Va. May 22, 2019).............................................13

*Robbins v. Laberge Eng'g & Consulting Ltd.*,
   No. 01 CV 1738, 2005 WL 2039195 (N.D.N.Y. Aug. 24, 2005).............................................9

*Roganti v. Metro. Life Ins. Co.*,
   786 F.3d 201 (2d Cir. 2015)....................................................................................................2

*Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*,
   No. 12-CV-1254, 2014 WL 1311827 (N.D.N.Y. Mar. 31, 2014),
   *aff'd*, 612 F. App'x 17 (2d Cir. 2015)...................................................................................5

*Shapiro v. N.Y. Univ.*,
   640 F. Supp. 2d 411 (S.D.N.Y. 2009)....................................................................................8

*Stern v. Oxford Health Plans, Inc.*,
   No. 12-cv-2379, 2013 WL 3762898 (E.D.N.Y. July 17, 2013).................................................9

*Tucker v. Hartford Life & Accident Ins. Co.*,
   No. 05-CV-1451, 2008 WL 11504754 (N.D.N.Y. Mar. 14, 2008) .........................................5

*Twombly v. AIG Life Ins. Co.*,
   199 F.3d 20 (1st Cir. 1999)....................................................................................................13

*United States v. Helms*,
   No. 08 CV 151, 2010 WL 3384997 (S.D. Cal. Aug. 26, 2010),
   *aff'd*, 579 F. App'x 615 (9th Cir. 2014)...............................................................................13

*West v. Harkness*,
   No. 17-CV-0621, 2021 WL 4289515 (N.D.N.Y. Sept. 21, 2021)............................................7

*Whelehan v. Bank of America Pension Plan for Legacy Cos.*,
   621 F. App'x 70 (2d Cir. 2015) ........................................................................................9, 10

*Wilbert v. Commissioner*,
   553 F.3d 544 (7th Cir. 2009) ..........................................................................................13, 14

*Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*,
   No. 20-CV-337, 2022 WL 4465498 (N.D.N.Y. Sept. 26, 2022) ................................................ 6

*Zeuner v. Suntrust Bank Inc.*,
   181 F. Supp. 3d 214 (S.D.N.Y. 2016) ....................................................................................... 8

**Statutes**

Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. ................................. *passim*

**Rules**

Local Rule 56.1(b) ......................................................................................................................... 6

**Other Authorities**

Cambridge Dictionary,
   https://dictionary.cambridge.org/us/dictionary/english/commute ........................................... 12

IRS Pub. 463,
   *available at* https://www.irs.gov/pub/irs-pdf/p463.pdf ........................................................... 12

Macmillan Dictionary,
   https://www.macmillandictionary.com/us/dictionary/american/commute_1 .......................... 12

Vocabulary.com,
   https://www.vocabulary.com/dictionary/commute .................................................................. 12

## PRELIMINARY STATEMENT

Plaintiff, a former PSEG employee, seeks severance benefits under the Public Service Enterprise Group Incorporated Separation Allowance Plan for Non-Represented Employees ("Plan"),[1] which is governed by the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. ("ERISA"). Plaintiff is not entitled to benefits.

The reason is simple. Plaintiff's position was eliminated in a corporate reorganization. PSEG offered Plaintiff a new position. Under the Plan, employees offered new positions in a reorganization could reject them and receive severance benefits only if the new position required them "to increase their one-way *commuting distance* by more than 50 miles." (Plan §4.1(c), Doc. 43-3 at Bates p. PSEG-Fromer 15; emphasis added.) Prior to the reorganization, Plaintiff was working from his home in Albany, NY. In his new position, Plaintiff would have continued working from his home. His commuting distance would therefore not have changed, and he was not entitled to severance benefits under the Plan.

To support his claim that he was entitled to benefits, Plaintiff's strategy has been to cite the *business travel* his new position would have entailed and call that his *commute*. That's just wrong. Common sense tells you it's wrong. You don't have to be a lawyer to know that going to your office is commuting, and going to visit other places in connection with your job is business travel. Dictionaries recognize it, even the dictionary Plaintiff cites. (*See* Defs.' Opp'n Br., Doc. 48, at 12.) The Internal Revenue Service recognizes it in its rules of deductibility – business travel is deductible, commuting is not. The case law uniformly recognizes it, even the case law Plaintiff cites. (*See* Defs.' Opp'n Br., Doc. 48, at 12-13.)

---

[1] This Memorandum is submitted on behalf of all Defendants, including Public Service Enterprise Group Incorporated ("PSEG"), PSEG Power LLC, and PSEG Energy Resources & Trade LLC (all referred to herein collectively as "PSEG").

1

The long and short of it is that Plaintiff's commute would not have changed at all, let alone increased by 50 miles each way, the prerequisite for an award of severance benefits under the Plan. As a result, he was not entitled to benefits under the Plan's plain language, and the denial of his claim for benefits was thus neither arbitrary nor capricious. Accordingly, Plaintiff's motion for summary judgment should be denied, PSEG's should be granted, and the Complaint should be dismissed with prejudice.

## LEGAL ARGUMENT

**I.    Evidence Outside the Administrative Record Is Inadmissible.**

PSEG has already discussed this issue at length both in its moving Memorandum (Defs.' SJ Mem., Doc. 43-1, at 6-7), and in its Memorandum opposing Plaintiff's summary judgment motion (Defs.' Opp'n Mem., Doc. 48, at 4-8). Plaintiff's contention that "evidence outside of the administrative record can be reviewed where the Plaintiff establishes good cause" (Pl.'s Opp'n Mem., Doc. 46, at 5, quoting *Babino v. Gesualdi*, 278 F. Supp. 3d 562, 586 (E.D.N.Y. 2017)) is beside the point, unless Plaintiff has in fact established good cause. He hasn't.

To begin with, two of the decisions Plaintiff cites are inapposite, *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434 (S.D.N.Y. 2011), and *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201 (2d Cir. 2015). Neither addresses the admission of extrinsic evidence.[2]

---

[2] The parenthetical Plaintiff offers for *Mayers* takes the plan administrator to task for failing to "take into account evidence" necessary for its benefit determination. Even in Plaintiff's view, that is not the problem here; rather, Plaintiff complains about the supposed inadequacy of the evidence before the EBC. As discussed below, and in PSEG's Memorandum opposing Plaintiff's summary judgment motion (Defs.' Opp'n Mem., Doc. 48, at 5-7 & n.2), Plaintiff has no one to blame for that but himself.

From *Roganti*, Plaintiff quotes a passage suggesting it was the Plan Administrator's job to undertake an independent investigation to find evidence supporting his application for benefits. *Roganti* says not that, but the opposite: "[N]othing requires plan administrators to scour the countryside in search of evidence to bolster a petitioner's case. Thus, a claimant's evidence may simply be insufficient to establish his entitlement to benefits...." *Roganti*, 786 F.3d at 213 (citations

2

The two pertinent decisions Plaintiff cites demonstrate the *absence* of good cause here. Plaintiff cites *Delprado v. Sedgwick Claims Management Services*, No. 12-CV-673, 2013 WL 12174051 (N.D.N.Y. Oct. 22, 2013), for the standard for permitting *discovery* in ERISA benefit cases. As we all know, that standard is far less demanding than the good cause standard for *admissibility*. *See* Mem.-Decision & Order (Doc. 40) at 8 ("[T]he standard for permitting discovery to supplement the administrative record in an ERISA case is far less stringent than the standard for actually considering that outside evidence": plaintiff "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement") (citing cases).

What *Delprado* says about good cause is that it can exist "where there was a demonstrated conflict of interest *and* the procedures employed in arriving at the claim determination were flawed"; "where an administrator's reason for denying a claim was not stated in its notices to claimants"; and "where an administrative record was incomplete" and "the claimant was not at fault" for the evidence's "absence from the [administrative] record." *Delprado*, 2013 WL 12174051, at *2 (citing cases; emphasis added). None of those circumstances is present here.

On the other hand, as *Delprado* observes, there is no "good cause" for admitting extrinsic evidence where the plan administrator gave the plaintiff "ample time to submit additional

---

& ellipsis omitted). S*ee also, e.g., Gonzalez v. Local 553 Pension Fund*, No. 16 Civ. 8893, 2017 WL 3242329, at *5 (S.D.N.Y. July 28, 2017) ("Contrary to Plaintiff's assertion, Defendants were not required to supplement the administrative record with evidence to bolster Plaintiff's claim. The Second Circuit has never found that ERISA fiduciaries have a duty to gather information") (internal quotation marks & citation omitted); *Correia v. Unum Life Ins. Co. of Am.*, No. 14 Civ. 7960, 2016 WL 5462827, at *33 (S.D.N.Y. Sept. 29, 2016) ("Absent any legal ground on which Unum was obligated to seek out the raw data underlying Plaintiff's attending physicians' opinions – particularly because this data was submitted neither by those physicians nor by Plaintiff, who bears the burden of establishing disability – the Court will not find that Unum acted arbitrarily and capriciously in denying Plaintiff's claim without obtaining that information").

3

materials." *Delprado*, 2013 WL 12174051, at *3 (citing *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 295 (2d Cir. 2004); *Muller v. First Unum Life Ins. Co. of Am.*, 341 F.3d 119, 125-26 (2d Cir. 2003)); *see also, e.g., Baird v. Prudential Ins. Co. of Am.*, No. 09 Civ. 7898, 2010 WL 3743839, at *8 (S.D.N.Y. Sept. 24, 2010) (no good cause where plaintiff submits "evidence []he raised or could have raised during the administrative process"), *aff'd*, 458 F. App'x 39 (2d Cir. 2012); *Garrett v. Provident Life & Cas. Ins. Co.*, No. 11-CV-00133, 2021 WL 1946330, at *5 (E.D.N.Y. May 14, 2021) (holding "'good cause' does not exist where the claimant has been given 'ample time to submit additional materials' into the administrative record but the claimant fails to do so").

Everything outside the Administrative Record that Plaintiff submits with his own summary judgment motion and his opposition to PSEG's (Docs. 44-6 through 44-15, 44-17 through 44-20, 46-1 through 46-4) could have been submitted to the Plan Administrator. The letter denying Plaintiff's initial claim expressly informed him that if he disagreed with the denial of benefits, "you can file a written appeal within 60 days of the date of this letter," and "[y]ou can submit any other documentation in support of your appeal." (Doc. 43-3 at Bates p. PSEG-Fromer 25.) The Plan, too, expressly granted Plaintiff 60 days to appeal, and provided for "reasonable access to, and copies of, all documents, records and other information relevant to the claimant's appeal. The Claimant may submit written comments, documents, records and other information relating to the claim for benefits to the Plan Administrator." (Plan Art. VII, Doc. 43-3 at Bates pp. PSEG-Fromer 0020 to PSEG-Fromer 0021.)

Plaintiff himself is thus at fault for the absence from the Administrative Record of the materials he submits here. That precludes their admissibility. *See, e.g., McCarthy-O'Keefe v. Local 298/851 IBT Emp'r Grp. Pension Tr. Fund*, No. 13-CV-4785, 2015 WL 783352, at *5 (S.D.N.Y.

4

Feb. 24, 2015) (Plaintiff, "having been advised that she was free to admit any evidence in support of her appeal," including "written comments, documents, records, and other information relating to the claim ..., cannot now, years later, insist on expanding the record for purposes of relitigating her earlier grievance"), *aff'd*, 648 F. App'x 145 (2d Cir. 2016); *Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, No. 12-CV-1254, 2014 WL 1311827, at *9 (N.D.N.Y. Mar. 31, 2014) (excluding evidence where "Plaintiff never submitted the records to TIAA-CREF, despite having possession of them and despite having several months to submit the information"), *aff'd*, 612 F. App'x 17 (2d Cir. 2015); *Tucker v. Hartford Life & Accident Ins. Co.*, No. 05-CV-1451, 2008 WL 11504754, at *10 (N.D.N.Y. Mar. 14, 2008) (long-term disability plaintiff may not submit "clarifying remarks" from treating physician, because she could have submitted such remarks during the administrative process).

Moreover, Plaintiff was represented at both stages of the administrative process – the initial claim stage and the appeal – by Ronald G. Dunn, Esq., one of his attorneys in this litigation. (*See* Pl.'s e-mail making initial claim, cc'ing "Ron Dunn," Doc. 43-3 at Bates p. PSEG-Fromer 26; Pl.'s appeal letter, cc'ing "Ronald G. Dunn, Esq.," Doc. 43-3 at Bates pp. PSEG-Fromer 28 through PSEG-Fromer 31.) Plaintiff's failure to submit evidence during the administrative process is consequently all the more inexcusable. *See Baird*, 2010 WL 3743839, at *8 (holding long-term disability plaintiff's declaration and a physician's letter inadmissible, because her declaration "discusses evidence she raised or could have raised during the administrative process," plaintiff has "shown no good cause for why she delayed in obtaining this additional medical opinion," plaintiff "was represented by counsel through [the administrative] process, and she offers no excuse for failing to submit the information").

5

The only other decision Plaintiff cites on good cause is *Babino v. Gesualdi*, 278 F. Supp. 3d 562 (E.D.N.Y. 2017), *aff'd*, 744 F. App'x 30 (2d Cir. 2018). *Babino* observes that good cause is absent when the plaintiff's purpose in submitting evidence outside the administrative record is merely "to challenge an administrator's substantive determination" or, to put it another way, to "challenge[] the merits of the decision-maker's determination." *Id.* at 586-87 (quoting, respectively, *Richard v. Fleet Fin. Grp. Inc. Ltd. Emp. Benefits*, 367 F. App'x 230, 233 (2d Cir. 2010); *Wedge v. Shawmut Design & Constr. Grp. Long Term Disability Ins. Plan*, 23 F. Supp. 3d 320, 337 (S.D.N.Y. 2014)). That is the obvious and only conceivable basis of Plaintiff's extra-Administrative Record submissions.

Plaintiff has failed to demonstrate good cause for the admission of evidence outside the Administrative Record. All such evidence is accordingly inadmissible and should be disregarded.

## II. Plaintiff Has Explicitly or Implicitly Admitted Every Single Paragraph of PSEG's Statement of Material Facts.

Local Rule 56.1(b) provides the party opposing summary judgment "shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."

PSEG filed a 33-paragraph Statement of Material Facts in support of its summary judgment motion (Doc. 43-2, cited herein as "Facts"). Plaintiff's Response (Doc. 46-7) unequivocally admits 14 of them (paragraphs 1 through 3, 5, 7, 10 through 14, 16, 17, 23, and 28). The rest of Plaintiff's responses either hedge, claim a lack of knowledge or information, make denials based on materials outside the Administrative Record (which as shown in the preceding section are inadmissible), rely on the allegations of the Complaint, or consist of some combination of the foregoing. Such

6

responses are inadequate and constitute admissions as a matter of law. *See, e.g., Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*, No. 20-CV-337, 2022 WL 4465498, at *2 (N.D.N.Y. Sept. 26, 2022) ("[I]t is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Davis v. City of Syracuse*, No. 12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge, mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute"); *Kotler v. Bosco*, No. 17-CV-0394, 2020 WL 7029138, at *1 n.2 (N.D.N.Y. July 21, 2020) ("Plaintiff's response that he 'lacks knowledge and information sufficient to form a belief' is insufficient to create a genuine issue of fact for trial"), *adopted*, 2020 WL 6128168 (N.D.N.Y. Oct. 19, 2020); *West v. Harkness*, No. 17-CV-0621, 2021 WL 4289515, at *4 n.3 (N.D.N.Y. Sept. 21, 2021) ("[V]ague denials and memory lapses do not create genuine issues of material fact") (quoting *FDIC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000; ellipsis omitted).

Accordingly, PSEG's Statement of Material Facts should be deemed undisputed in its entirety.

### III. Plaintiff Cannot Carry His Heavy Burden of Proving the Denial of Benefits Was Arbitrary and Capricious.

The key question here is the meaning of "commute," as contrasted with "business travel." Plaintiff would have been entitled to Plan benefits only if the new position PSEG offered him would have "increase[d] [his] one-way commuting distance by more than 50 miles." (Facts ¶10.) The Plan Administrator (the Employee Benefits Committee, also called the "Committee" or "EBC") denied Plaintiff Plan benefits, because in his new position, he would have continued to work from his home in Albany, New York. His *commute* would therefore not have changed, though

he would have had to undertake periodic *business travel* to the Valley Forge, Pennsylvania area. As the EBC explained to Plaintiff in its letter affirming the initial denial of benefits, he had been repeatedly told "you could continue to work from home, however, periodically, you would need to travel to the Valley Forge, PA area to support the PJM Market." (Facts ¶30.) For example, Plaintiff's new supervisor had written, "There will be no change to your physical work location. Your work location will remain in Albany, NY. You will be expected to be physically present at PJM meetings once in-person meetings resume." (Facts ¶31.) The EBC's letter concluded:

> ***Your principal physical work location was not changing*** – it would ***remain as your home***. Your ***business travel would change*** from the NY Market offices to the PJM Market offices after face-to-face meetings resume (whatever they would look like after offices re-open).
>
> As described above, all of the conversations you had with Ms. Moskowitz, your new manager, and Ms. Holness were clear that ***your principal work location was not changing from your home***. ***Thus, your commuting distance would not change***. The Committee concluded that based on the terms of the Plan, because your grade level and ***commuting distance were staying the same*** with the change in your role from supporting the NY Market to supporting the PJM Market, you are not eligible for severance benefits under the Plan.
>
> Based on the foregoing, the Committee denied your appeal for 36 weeks of severance pay under the Plan.

(Facts ¶33.)

It is undisputed that the arbitrary and capricious standard applies here, under which "a court must give great deference to a plan administrator's interpretation of a plan's terms. The court must yield to a plan administrator's 'reasonable' interpretation, even if the plaintiff's alternative interpretation of the plan's terms is also reasonable." *Shapiro v. N.Y. Univ.*, 640 F. Supp. 2d 411, 421 (S.D.N.Y. 2009) (citing *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271, 1273 (2d Cir. 1995)). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation

8

must be allowed to control." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008); *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016).

"The Plaintiff has the burden of demonstrating that the denial of benefits was arbitrary and capricious." *Robbins v. Laberge Eng'g & Consulting Ltd.*, No. 01 CV 1738, 2005 WL 2039195, at *5 (N.D.N.Y. Aug. 24, 2005) (Sharpe, J.). "Moreover, not only does plaintiff bear the burden of proof," but "the scope of judicial review under the arbitrary and capricious standard is quite narrow and this Court may not substitute its judgment for that of the plan administrator." *Stern v. Oxford Health Plans, Inc.*, No. 12-cv-2379, 2013 WL 3762898, at *9 (E.D.N.Y. July 17, 2013) (internal quotation marks & brackets omitted).

In attempting to carry his burden, Plaintiff expends nearly all his efforts protesting that the evidence presented to the EBC was inadequate. The Committee "relied solely upon the minimal and incorrect information provided to it." (Pl.'s Opp'n Mem., Doc. 46, at 5.) "[T]he information presented to the Employee Benefits Committee about his work location was clearly erroneous." (*Id.* at 6.) The EBC was "not being provided" with the necessary evidence. (*Id.*) The EBC "was not presented with information." (*Id.* at 7.) "Clearly, the Employee Benefits Committee was not provided with the evidence needed." (*Id.* at 8.)

The irony of Plaintiff's protestations is that it was *Plaintiff's responsibility to present the necessary evidence* to the Plan Administrator to support his claim for benefits. This has already been discussed in detail above, but it's worth recalling the Supreme Court's warning that "to the extent participants fail to develop evidence during internal review, they risk forfeiting the use of that evidence in district court," as "Courts of Appeals have generally limited the record for judicial review to the administrative record compiled during internal review." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 111 (2013).

9

The Second Circuit Court of Appeals is one of those courts. For example, in *Whelehan v. Bank of America Pension Plan for Legacy Cos.*, 621 F. App'x 70 (2d Cir. 2015), which affirmed summary judgment for the defendants, plaintiff argued the plan administrator "was obliged to undertake a full investigation of her employment history, document its efforts and findings, and demonstrate that under the Plan, a person with such a history is not entitled to benefits," *id.* at 71. "This," the court responded, "is not persuasive. It is an ERISA claimant's burden to establish an entitlement to benefits, and 'administrators may exercise their discretion in determining *whether a claimant's evidence is sufficient* to support his claim.'" *Id.* at 71-72 (quoting *Roganti*, 786 F.3d at 212; emphasis added). A plaintiff must "point to evidence *in the administrative record* undermining the [plan administrator's] decision," especially where (as here) the plaintiff "had the opportunity to compile an evidentiary record demonstrating her entitlement to benefits – an opportunity that she was informed included the right to obtain relevant documents from the Plan administrator." *Id.* at 72 (emphasis added); *see also, e.g., Halberg v. United Behavioral Health*, 408 F. Supp. 3d 118, 157 (E.D.N.Y. 2019) ("[T]he evidence supporting [plaintiffs'] contentions must appear in the administrative record. Under ERISA an issue or theory that is raised in court proceedings must be based on information or evidence that was actually before the plan administrators") (internal quotation marks omitted); *Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 318 (2d Cir. 2008) ("The doctrine limiting review of ERISA claims to evidence before the plan administrator was developed to prevent federal courts from becoming substitute plan administrators and thus to serve ERISA's purpose of providing a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously") (internal

10

quotation marks omitted). Plaintiff accordingly cannot avoid summary judgment by relying on his own failure to present evidence to the Plan Administrator.[3]

Plaintiff also attempts to discount *Graham Engineering Corp. v. Adair*, No. 16-CV-2521, 2021 WL 9204331 (M.D. Pa. Feb. 10, 2021), but his attempt depends on a misreading of the decision. Plaintiff focuses on the counterclaimant Slusarz's "potential need to move to a new work location" in the future more than 50 miles from his original location. (Pl.'s Opp'n Mem., Doc. 46, at 9.) However, Plaintiff ignores the other criterion for severance pay under the employment agreement at issue, an increase in "the Employee's commute by more than fifty miles." *Graham*, 2021 WL 9204331, at *3. Slusarz was offered a new position in a "satellite" location in Connecticut, less than five miles away from his original location in Rhode Island. He nevertheless turned the position down and demanded severance, in part because he would have had to "spend excessive time on the road" in business travel, including travel to his employer's new headquarters in York, Pennsylvania. *Id.* at *4, 12.

That did not constitute an increase in Slusarz's "commute" by more than 50 miles, because his regular work location would have been his employer's satellite office, which was only five miles from his original work location. The trips to York, on the other hand, would have been "business travel," the distinction between the two terms reflecting their "plain and ordinary meaning." *Id.* at *12. In noting the distinction, the court relied on IRS publications that defined a "commuting expense" as "based on a taxpayer's 'transportation and commuting between an

---

[3] There is another irony at least worth a mention. Plaintiff's insistence he did not work from his home in Albany but from PSEG office space in Albany is belied by its source, Plaintiff's inadmissible Affidavit opposing summary judgment (Doc. 46-1). Plaintiff there admits he worked at his home during the last few weeks of his employment, like everyone else at the beginning of the pandemic. (Pl.'s Aff., Doc. 46-1, ¶¶21-23.)

11

employee's place of residence and place of employment,'" and "business travel" as encompassing "traveling away from home for your business, profession, or job." *Id.* at *12 n.11.[4]

Plaintiff doesn't even try to address the other authorities PSEG cited confirming the common understanding that an employee's "commute" is his daily travel to and from his regular workplace; in Plaintiff's case, his home in Albany, New York. As PSEG observed, that is how the Internal Revenue Service defines it. *See* IRS Pub. 463 at 12 ("Transportation expenses between your home and your main or regular place of work are personal commuting expenses"), *available at* https://www.irs.gov/pub/irs-pdf/p463.pdf (last visited Feb. 20, 2023); *id.* at 14 ("You can't deduct the costs of taking a bus, trolley, subway, or taxi, or of driving a car between your home and your main or regular place of work" because they are "[c]ommuting expenses").

That is how dictionaries define it. *See, e.g.*, Cambridge Dictionary (to "commute" is "to make the same trip regularly between work and home"), https://dictionary.cambridge.org/us/dictionary/english/commute (last visited Feb. 20, 2023); Vocabulary.com (a "commute" is "a regular journey of some distance to and from your place of work"), https://www.vocabulary.com/dictionary/commute (last visited Feb. 20, 2023); Macmillan Dictionary (to "commute" is "to travel regularly to and from work") (emphasis added),

---

[4] Plaintiff also observes that *Graham* "is not binding on this court as it is from the Middle District of Pennsylvania" and applies state contract law rather than ERISA. Plaintiff's first observation is a mere truism. As he no doubt knows, *no* decision is binding on this Court unless it issues from the United States Supreme Court or the U.S. Court of Appeals for the Second Circuit. *See, e.g., Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case"). That hasn't kept Plaintiff from citing a multitude of federal district court opinions.

Plaintiff's second observation was already made by PSEG in its moving brief: "Since Slusarz's claim sounded in contract rather than ERISA, it was reviewed under a de novo standard, rather than the deferential arbitrary and capricious standard that applies here. Certainly, if Slusarz's claim failed under a de novo standard, Plaintiff's claim, presenting virtually identical facts, must fail under the arbitrary and capricious standard." (Defs.' SJ Mem., Doc. 43-1, at 13.)

https://www.macmillandictionary.com/us/dictionary/american/commute_1 (last visited Feb. 20, 2023).

That is also how the case law defines it: "[C]ommuting within the generally understood meaning of that concept [is] repeated travel along the same route between home and one's regular place of work." *Twombly v. AIG Life Ins. Co.*, 199 F.3d 20, 22 (1st Cir. 1999); *see also, e.g., Porter v. Lowe's Cos., Inc.'s Bus. Travel Accident Ins. Plan*, 731 F.3d 360, 365 n.15 (5th Cir. 2013) (referring to an "employee's everyday commute to and from the place of employment" and "regular travel between home and work for the sole purpose of reaching the intended destination") (quoting 10 COUCH ON INS. §143:13); *United States v. Helms*, No. 08 CV 151, 2010 WL 3384997, at *8 (S.D. Cal. Aug. 26, 2010) ("[I]t has been consistently held that a taxpayer's 'commuting' expenses from his residence to his place of employment are not deductible") (quoting *Crowther v. Comm'r*, 269 F.2d 292, 298 (9th Cir. 1959) (citing *Comm'r v. Flowers*, 326 U.S. 465 (1946))), *aff'd*, 579 F. App'x 615 (9th Cir. 2014).

"Business travel" on the other hand "is clearly distinct from, and does not include, commuting to and from work"; it is "travel undertaken for work or business purposes, as opposed to other types of travel, such as ... regularly commuting between one's home and workplace." *Perdue v. Rockydale Quarries Corp.*, No. 18CV00416, 2019 WL 2216527, at *6 (W.D. Va. May 22, 2019).

The distinction between commuting and business travel is highlighted in *Wilbert v. Commissioner*, 553 F.3d 544 (7th Cir. 2009), where the court offered the example of a lawyer-taxpayer who commutes to his office in Minneapolis, but because he has an international practice spends most of his time in business travel:

> [A] lawyer whose home and office are both in Minneapolis but who has an international practice [] as a result spends more time on the road than he does at

13

> home. Nevertheless he can deduct his traveling expenses. His work requires him to maintain a home within normal commuting distance of Minneapolis because that is where his office is, but his work also requires him to travel, and the expenses he incurs in traveling are necessary to his work and he cannot offset them by relocating his residence to the places to which he travels because he has to maintain a home near his office.

*Id.* at 547. If Plaintiff here had accepted the new position offered to him, he would have been in the position of the lawyer in the above example: *commuting* to his home office (a very short commute) just as he did before, but spending some portion of his time in *business travel*. Under *Wilbert*, even if Plaintiff were to "spend more time on the road than he does at home," that would not transmogrify his business travel into commuting, and would not entitle him to benefits under the Plan, which addresses only an increase in *commuting* distance.

To circle back, then, applying the distinction between "commuting" and "business travel," the EBC found that in his new position Plaintiff would have continued working from his home office, so his commute would not have changed at all, let alone increased by more than 50 miles each way; and while Plaintiff's new position would have required more business travel than Plaintiff preferred, Plaintiff's preferences could not change the settled meaning of "commuting" to "business travel Plaintiff didn't want to undertake."

The EBC's decision denying Plaintiff Plan benefits was thus about as far from arbitrary and capricious as it is possible to be – its decision was dictated by the Plan's plain language. The Court should therefore deny Plaintiff's summary judgment motion, grant PSEG's, and dismiss the Complaint with prejudice.

## CONCLUSION

This case is straight forward. Plaintiff worked for PSEG from his home. His position was slated for elimination in a reorganization and PSEG offered Plaintiff a new position in which he would continue working from his home. The Plan permitted Plaintiff to reject the new position

and collect severance benefits only if the new position would have increased his "one way commuting distance by more than 50 miles." Plaintiff's commuting distance would not have changed at all. That means he was not entitled to benefits under the Plan. No other conclusion is possible under the Plan's plain language. In other words, the denial of Plan benefits to Plaintiff was neither arbitrary nor capricious, but instead the only decision the Plan's plain language permitted.

The Court should therefore deny Plaintiff's summary judgment motion, grant PSEG's, and dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: March 31, 2023

**FISHER & PHILLIPS LLP**

By:   *s/Kathleen McLeod Caminiti*
Kathleen McLeod Caminiti
Fisher & Phillips LLP
430 Mountain Avenue, Suite 303
Murray Hill, NJ 07974
Tel.: 908-516-1050
Fax: 908-516-1051
Email: kcaminiti@fisherphillips.com

**PSEG SERVICES CORPORATION**

By:   *s/Susan Szafranski*
Susan Szafranski
Admitted *Pro Hac Vice*
Associate Counsel – Labor, Employment, & Benefits
PSEG Services Corporation
80 Park Plaza
Newark, NJ 07102
Email: susan.szafranski@pseg.com
Tel.: 908-380-1272

*Attorneys for Defendants Public Service Enterprise Group Incorporated, PSEG Power LLC, and PSEG Energy Resources & Trade LLC*

15