**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HOWARD FROMER,**

                **Plaintiff,**

        v.

**PUBLIC SERVICE ENTERPRISE**
**GROUP INCORPORATED et al.,**

                **Defendants.**
_____

**1:20-cv-963**
**(BKS/CFH)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Gleason, Dunn, Walsh & O'Shea | RONALD G. DUNN, ESQ. |
| 300 Great Oaks Boulevard, Suite 321 | NANCY S. WILLIAMSON, ESQ. |
| Albany, NY 12203 | |
| **FOR THE DEFENDANTS:** | |
| Fisher, Phillips Law Firm | DAVID B. LICHTENBERG, ESQ. |
| 430 Mountain Avenue | KATHLEEN MCLEOD CAMINITI, |
| Murray Hill, NJ 07974 | ESQ. |
| PSEG Services Corp | SUSAN SZAFRANSKI, ESQ. |
| 80 Park Plaza | |
| Newark, NJ 07102 | |

**Brenda K. Sannes**
**Chief District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Howard Fromer brought this action against defendants

Public Service Enterprise Group Incorporated (PSEG), PSEG Power LLC, and PSEG Energy Resources & Trade LLC (hereinafter "PSEG ER&T"), alleging a violation of the Employee Retirement Income Security Act of 1974[1] (ERISA).  (Compl., Dkt. No. 1.)  Pending are defendants' motion for summary judgment, (Dkt. No. 43), and Fromer's motion for summary judgment, (Dkt. No. 44).  For the reasons that follow, defendants' motion is granted and Fromer's motion is denied.

## II.  Background

### A.  Facts[2]

Fromer was employed by PSEG for approximately eighteen years as Director, Market Policy at New York Independent System Operator (NYISO).  (Defs' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 43, Attach. 2.)  During his employment with PSEG, Fromer worked in Albany, New York.  (*Id.* ¶ 3.)  On or about April 27, 2020, Fromer was informed that his position was to be eliminated on May 4, 2020, as part of a corporate reorganization.  (*Id.* ¶ 5.)  Simultaneously, however, Fromer was offered the position of "PJM Strategy Manager," at the same grade and

---

[1]  *See* 29 U.S.C. §§ 1001-1193c.

[2]  Unless otherwise noted, the facts are not in dispute.

pay as his eliminated position.  (*Id.* ¶ 7.)

Fromer declined the offer because he believed it would require "'commuting more than [fifty] miles from [his] current position located in Albany." (*Id.* ¶ 8.)  Accordingly, Fromer requested and applied for benefits pursuant to the terms of the PSEG Separation Allowance Plan for Non-Represented Employees (hereinafter "the Plan").  (*Id.* ¶¶ 8, 15; AR at 38.)[3]

Section 4.1 of the Plan provides, in relevant part, that, in order to receive separation pay, an employee must be "involuntarily terminated by an Employer for . . . (b) [a] reorganization of the Employer (as determined by the Plan Administrator)," and that an employee is eligible for severance benefits when the "[c]essation of employment is in connection with a reduction in force or Employer reorganization . . . where the only position offered to the Eligible Employee within the Company and Affiliates (i) would require the Eligible Employee to increase their one-way commuting distance by more than [fifty] miles, or (ii) is two or more grades below the level of the Eligible Employee's current position." (AR at 10.)

PSEG denied Fromer's request, reasoning that Fromer was not

_____

[3]  "AR" refers to the administrative record, bearing the sequential bates numbers PSEG-Fromer 000009 to PSEG-Fromer 000046 and filed as Dkt. No. 43, Attach. 3, Ex. A.  Citations to the administrative record refer to the pagination generated by CM/ECF, the Court's electronic filing system.

entitled to benefits because his "reporting location [would] not change; [he would] continue to work from home," and, thus, his "commuting distance would not have changed." (Defs.' SMF ¶ 22.) Additionally, PSEG noted that, although Fromer "would have been required to be present for certain PJM meetings[, t]ravel to these meetings is not considered commuting, but rather business travel for which [he] would have been reimbursed." (*Id.*)

Fromer appealed PSEG's decision to the plan administrator, the Employee Benefits Committee (EBC), and was permitted to provide "reasons [he] believ[ed] [he was] eligible for severance benefits . . . [and] submit any other documentation in support of [his] appeal." (AR at 20, 23-26.) The EBC reviewed Fromer's appeal letter and supporting documents, as well as Fromer's communications with Human Resources and the provisions of the Plan. (*Id.* at 36.) The EBC determined that Fromer's "principal physical work location was not changing," and, ultimately, denied Fromer's appeal, concluding that, "based on the terms of the Plan, because [Fromer's] grade level and commuting distance were staying the same with the change in [his] role from supporting the NY Market to supporting the PJM Market, [he was] not eligible for severance

benefits under the Plan."  (*Id.* at 38-41.)

## B.    Procedural History

In August 2020, Fromer brought this action, alleging that defendants violated 29 U.S.C. § 1132 by failing to provide him with severance benefits pursuant to the Plan.  (Compl.)  Defendants moved to dismiss the complaint for failure to state a claim.  (Dkt. No. 11.)  The Court denied defendants' motion to dismiss and defendants answered the complaint. (Dkt. Nos. 16, 20.)  Now pending before the Court are defendants' motion for summary judgment, (Dkt. No. 43), and Fromer's motion for summary judgment, (Dkt. No. 44).

## III.  Standards of Review

## A.    Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment may be granted only if all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*,

477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  *Anderson*, 477 U.S. at 248, 250; *see Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*

6

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

"It is appropriate for courts reviewing a challenge of denial of benefits under ERISA to do so on a motion for summary judgment, which provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record."  *Catania v. First Unum Life Ins. Co.*, No. 5:19-CV-133, 2020 WL 2129374, at *5 (N.D.N.Y. May 5, 2020) (quoting *Cohen v. Liberty Mut. Grp. Inc.*, 380 F. Supp. 3d 363, 376 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).  "In such an action the contours guiding the court's disposition of the summary judgment motion are necessarily shaped through the application of the substantive law of ERISA."  *Id.* (internal quotation marks and citation

omitted).

**B.** <u>**ERISA**</u>

ERISA section 502(a), codified at 29 U.S.C. § 1132(a), permits a
beneficiary of an employment benefit plan to bring a civil action "to recover
benefits due to him under the terms of his plan, [or] to enforce his rights
under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "To maintain a
claim pursuant to ERISA § 502(a)(1)(B), a plaintiff must demonstrate that
the employee benefit plan in question is a plan covered by ERISA, that he
is a participant in or beneficiary of the plan, and that he exhausted
administrative remedies." *Pelosi v. Schwab Cap. Mkts., L.P.*, 462 F.
Supp. 2d 503, 509 (S.D.N.Y. 2006) (citation omitted).

"The Supreme Court has held . . . that 'a denial of benefits
challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de
novo* standard unless the benefit plan gives the administrator or fiduciary
discretionary authority to determine eligibility for benefits or to construe
the terms of the plan.'" *Fay v. Oxford Health Plan*, 287 F.3d 96, 103-04
(2d Cir. 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.
101, 115 (1989)). Indeed, "'where . . . written plan documents confer upon
a plan administrator the discretionary authority to determine eligibility, [the

8

Court] will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious.'" *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016) (quoting *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009)).

In the context of ERISA, arbitrary and capricious means "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210-11 (2d Cir. 2015) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995). The arbitrary and capricious standard is "highly deferential, and the scope of judicial review is narrow." *Id.* at 211 (internal quotation marks and citation omitted). "Accordingly, a plan administrator's decision is intended to be final—within the bounds of the highly deferential arbitrary-and-capricious standard—and not merely an input with 'the potential to assist the Court' in making the ultimate determination." *Id.* at 217 (citation omitted). "The plaintiff has the burden of demonstrating that the denial of benefits was arbitrary and capricious." *Robbins v. Laberge Eng'g & Consulting Ltd.*, No. 1:01-CV-1738, 2005 WL 2039195, at *5 (N.D.N.Y. Aug. 24, 2005) (citing *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir.1995)).

9

Here, the Plan Administrator had discretionary authority to determine eligibility for benefits under the Plan and the parties, therefore, agree that the arbitrary and capricious standard applies.  (The Plan § 3.4, AR at 10; Dkt. No. 43, Attach. 1 at 4-6; Dkt. No. 44, Attach. 1 at 7-8.)

## IV.  Discussion

### A.    Evidence Considered: The Administrative Record

Fromer argues that evidence outside of the administrative record should be considered because the administrative record was incomplete, there was a conflict of interest as "the denial of [his] severance was made by senior leaders at PSEG who had an interest in protecting the finances of PSEG," and because the EBC did not conduct "any investigation into the travel requirements that would have been place on [him] in the PJM Strategy Manager position."  (Dkt. No. 44, Attach. 1 at 8-14; Dkt. No. 46 at 4-9.)  Defendants contend that the Court should disregard evidence outside of the administrative record because Fromer seeks the admission of evidence that he could have, but failed to, offer during the administrative process, and because Fromer cannot show that the alleged conflict of interest influenced the EBC's determination, and, therefore, cannot establish good cause to expand the record.  (Dkt. No. 43, Attach. 1

at 6-7; Dkt. No. 48 at 5-8; Dkt. No. 50 at 2-6.)  Fromer responds that "'it is appropriate to allow the introduction of additional evidence if the [P]lan's compliance failures adversely affected the development of the administrative record,'" and the EBC "failed to review information that was available to its members . . . or even consider any of the claims submitted by [Fromer] in his appeal."  (Dkt. No. 49 at 3 (quoting *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016).)

Generally, "courts limit their review of an ERISA benefits denial to the administrative record as it existed when the adverse benefits determination was made."  *Cohen*, 380 F. Supp. 3d at 380 (citing *DeFelice v. Am. Int'l Life Assurance Co.*, 112 F.3d 61, 66-67 (2d Cir. 1997)).  The Court's "decision whether to admit additional evidence [beyond the administrative record] is one which is discretionary . . . , but which discretion ought not to be exercised in the absence of good cause." *DeFelice*, 112 F.3d at 66.  The proponent bears the burden "to allege facts, with sufficient specificity, that would support the existence of 'good cause' permitting the admission of additional evidence beyond the administrative record."  *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 98 n.2 (2d

Cir. 2003) (citations omitted).

Courts in the Second Circuit "are more likely to find good cause where the evidence outside the administrative record indicates some manner of procedural unfairness, such as a conflict of interest on the part of the plan administrator."  *Provident Life & Accident Ins. Co. v. McKinney*, No. 3:19-CV-1325, 2022 WL 625731, at *3 (D. Conn. Feb. 7, 2022) (collecting cases).  However, courts are "unlikely to find good cause . . . when the evidence at issue concerns the plan administrator's substantive decision, rather than a claimed procedural unfairness . . . [, or] when the evidence was available to the proponent at the time of the administrative proceeding and was simply not submitted into the administrative record." *Id.* at *4 (collecting cases).  And good cause will not be found where the proponent was given "'ample time to submit additional materials,'" yet chose not to do so.  *Delprado v. Sedgwick Claims Mgmt. Servs.*, No. 1:12-CV-673, 2013 WL 12174051, at *3 (N.D.N.Y. Oct. 22, 2013) (quoting *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 295 (2d Cir. 2004)); *see Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, 612 F. App'x 17, 19 (2d Cir. 2015) (finding district court did not abuse discretion in finding no good cause where claimant never submitted the records at

issue "despite having possession of them and despite having several months to submit the information").

Moreover, although a conflict of interest may demonstrate good cause to consider extra-administrative-record evidence "a categorical potential conflict of interest[, such as when the fiduciary both administers and funds the plan at issue,] will not be given weight where the claimant has failed to demonstrate that the conflict affected the administrator's decision making." *Kirkendall v. Halliburton, Inc.*, 760 F. App'x 61, 65 (2d Cir. 2019) (citing *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010)).  For example, in *DeFelice*, the Second Circuit found good cause upon a demonstrated conflict of interest because the conflict was accompanied by "procedural problems with the plan administrator's appeals process . . . [as] the appeals committee had no established criteria for determining an appeal and had a practice of destroying records within minutes after hearing an appeal." *Locher*, 389 F.3d at 294-95 (citing *DeFelice*, 112 F.3d at 66.)  In other words, the mere existence of a conflicted administrator "does not *per se* constitute good cause shown . . . [and] a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause." *Delprado*,

13

2013 WL 12174051, at *3 (internal quotation marks and citation omitted).

Here, Fromer has failed to demonstrate good cause to expand the administrative record.  First, while there appears to be a conflict of interest because members of the EBC are employed by PSEG and PSEG pays the Plan's benefits, (Dkt. No. 48 at 17), a conflicted administrator does not necessitate a finding of good cause, and Fromer has not cited to any insufficiency in the procedures used.[4]  *See Locher*, 389 F.3d at 294-96.

Second, as for Fromer's arguments that the EBC was not provided sufficient information, or failed to "investigate" his claims, Fromer cannot demonstrate good cause to expand the record on such grounds.  Fromer's complaint lies with the substantive decision reached by the EBC, rather than any substantiated procedural unfairness—extra-record evidence is not admissible for the purpose of challenging the EBC's substantive determination.  *See Richard v. Fleet Fin. Grp. Inc. Ltd. Emp. Benefits Plan*, 367 F. App'x 230, 233 (2d Cir. 2010) ("Although extra-record evidence might sometimes be admissible to assist procedural inquiries,

---

[4]  Fromer also argues that the purported conflict of interest should be weighed in favor of a substantive finding that the EBC's decision was arbitrary and capricious. (Dkt. No. 44, Attach. 1 at 13-14.)  However, as Fromer cannot establish any effect on the EBC's discretion for purposes of expanding the administrative record, and has failed to establish that the EBC's determination was unreasonable, the Court has not assigned any weight to the conflict.  *See Roganti*, 786 F.3d at 218.

14

here [the plaintiff] seeks to introduce extra-record evidence to challenge the Hartford's substantive determination, and it is not admissible for that purpose.") (citation omitted).  Moreover, PSEG explicitly informed Fromer, who was represented by counsel during the administrative proceedings, that if he disagreed with the decision to deny him severance benefits, he could appeal within sixty days and "state the reasons [he] believe[ed he was] eligible for severance benefits [and] submit any other documentation in support of [his] appeal" to the EBC.  (AR at 20.)  And the Plan also provided Fromer with "reasonable access to, and copies of, all documents, records and other information relevant to [his] appeal."  (*Id.*) Fromer has provided no reason why he was unable to submit the extra-administrative record evidence during the administrative process.

Likewise, the EBC was not obligated to conduct a wholesale investigation into Fromer's claims; the fault for any claimed absence of information from the administrative record, therefore, falls on Fromer.  *See Baird v. Prudential Ins. Co. of Am.*, No. 09 CIV 7898, 2010 WL 3743839, at *8 (S.D.N.Y. Sept. 24, 2010), *aff'd*, 458 F. App'x 39 (2d Cir. 2012) (finding extra-record evidence inadmissible because such evidence was "raised or could have [been] raised during the administrative process" and

the proponent "offer[ed] no excuse for failing to submit the information").

Third, as explained in more detail below, Fromer's suggestion that the EBC failed to consider all of the evidence presented is meritless.  In the initial decision, as well as at every stage of appeal, PSEG and the EBC set forth their reasoning in detail and explicitly listed the evidence considered.  (AR at 33-41.)

For these reasons, Fromer has failed to demonstrate good cause and, accordingly, evidence outside of the administrative record will not be considered.

**B.**   **Review of the Plan Administrator's Decision**

Defendants argue that they are entitled to summary judgment because Fromer cannot meet his burden of showing that the EBC's determination that Fromer was not entitled to severance benefits under the Plan, based upon its interpretation of the term "commute," was arbitrary and capricious.  (Dkt. No. 43, Attach. 1 at 7-13.)  Fromer contends that he is entitled to summary judgment because the EBC's denial of his appeal, based upon its determination that the travel required by the PJM Strategy Manager position was not a "commute," was arbitrary

16

and capricious.[5]  (Dkt. No. 44, Attach. 1 at 8-14.)

As discussed above, pursuant to the "highly deferential" arbitrary
and capricious standard, the Court may only disturb the EBC's benefits
determination if the determination was "'without reason, unsupported by
substantial evidence or erroneous as a matter of law.'"  *Roganti*, 786 F.3d
at 211 (quoting *Pagan*, 52 F.3d at 442).  Furthermore, "[w]here both the
plan administrator and a spurned claimant 'offer rational, though
conflicting, interpretations of plan provisions, the [administrator's]
interpretation must be allowed to control.'"  *Pulvers v. First UNUM Life Ins.
Co.*, 210 F.3d 89, 92-93 (2d Cir. 2000) (citation omitted), *abrogated on
other grounds by McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126 (2d
Cir. 2008).

Here, the EBC considered the entire administrative record, including
Fromer's written statement, (AR at 23-26), and concluded that the
reimbursable business travel required by the PJM Strategy Manager
position did not qualify as a "commute" under the terms of the Plan.  (*Id.* at

---

[5]  Fromer also argues that such determination was made "without investigation,"
however, as explained above, *see supra* Part IV.A, the EBC did not have to conduct
an "investigation" into Fromer's claims.  *See Roganti*, 786 F.3d at 213 ("'[N]othing . . .
requires plan administrators to scour the countryside in search of evidence to bolster a
petitioner's case.'") (citations omitted).

34-41.)  Specifically, the EBC determined that, because Fromer's "principal work location was not changing[, his] commuting distance would not change," and, thus, he was not eligible for severance benefits pursuant to Section 4.1 of the Plan, which required an increase in "one-way commuting distance by more than [fifty] miles."  (AR at 38, 41.)

According to defendants, the EBC's determination was reasonable because, as commonly defined and understood, an employee's "commute" means one's daily travel to and from one's regular workplace. (Dkt. No. 43, Attach. 1 at 10-13 (citing dictionary, government agency, and case law definitions of the word "commute").)  Conversely, Fromer posits that, due to the frequency that he assumed he would have to travel for meetings, the regular and repeated travel required of the PJM Strategy Manager position would qualify as "commuting."  (Dkt. No. 44, Attach. 1 at 8-10.)

Ultimately, Fromer and defendants offer competing rational interpretations of Section 4.1 of the Plan.  And, although Fromer's interpretation is reasonable, he has not met his burden of demonstrating that the EBC's determination was arbitrary and capricious because "[w]here both the plan administrator and a spurned claimant offer rational,

though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control."  *McCauley*, 551 F.3d at 132 (internal quotation marks and citation omitted).[6]

Based on the above, and upon careful review of the administrative record, the EBC's determination was supported by substantial evidence and proper consideration of the relevant factors, and was unaffected by clear error of judgment.  Accordingly, the decision to deny severance benefits was not arbitrary and capricious and defendants are entitled to summary judgment.

_____

[6]  Fromer's conclusory contention, that the EBC failed to "consider all relevant factors" or "look into [his] concerns in any way," misconstrues the record and relies on inadmissible extra-record evidence.  (Dkt. No. 44, Attach. 1 at 11-14.)  The EBC considered and weighed Fromer's claim that he was told during a phone conversation that, if he accepted the PJM Strategy Manager position, he would have to travel three to four days, biweekly—the EBC simply did not find such claim persuasive.  (AR at 41 ("You indicated in your appeal that the description of your physical work locations and travel to PJM office is not consistent with conversations you had about the role . . . . [However,] [y]our principal physical work location was not changing . . . , [y]our business travel would change . . . after face-to-face meetings resume.").)  In an attempt to circumvent this finding, Fromer has submitted the declaration of Marjorie Rosenbluth Philips, a former PSEG ER&T employee, who worked as the Director, Market Policy for the PJM region from August 2002 to June 2005.  (Dkt. No. 44, Attach. 20 ¶¶ 4-5.)  Philips asserts that, based upon her experience in the PJM region nearly two decades ago, the PJM Strategy Manager position offered to Fromer "could [not] have been performed" without "regular travel" to Newark, New Jersey and Valley Forge, Pennsylvania.  (*Id.* ¶ 21.)  The Court does not consider Philips' declaration because it is outside of the administrative record, but, regardless, such testimony offers nothing more than mere speculation regarding the frequency of Fromer's potential work travel when face-to-face meetings resumed and is, therefore, inadmissable.

## V.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 43) is **GRANTED** and the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that Fromer's motion for summary judgment (Dkt. No. 44) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

Dated: <u>May 30, 2024</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge